## UNITED STATES COURT FOR THE 5TH CIRCUIT IN THE SOUTHERN DISTRICT OF MISSISSIPPI.

Zorri N. Rush

V.

Microsoft Corporation

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

APR -3 2019

ARTHUR JOHNSTON
BY_____ DEPUTY

**CIVIL COMPLAINT**   3:19-cv-230-DPJ-FKB

### I.PARTIES TO COMPLAINT

    A.PLAINTIFF- Zorri N. Rush
        6912 Mount Vernon Rd
        Eupora, MS 39744
        6627531249
        zorrirush@hotmail.com

    B.DEFENDANT-Microsoft Corporation
        Office of Legal Compliance
        One Microsoft Way
        Redmond, WA 98052
        (425) 704-3638 Ext -2262110
        buscond@microsoft.com

### JURISDICTION

The plaintiff is a businessman from the Northern District of Mississippi currently involved in litigation with a number of defendants that began with case number 1:18-cv-00172-SA-RP Rush v. Berryhill filed 09/12/2018. In this case the defendants, Microsoft Corporation is listed as the the plaintiff defendant and the public address is listed as The Office of Legal Compliance at One Microsoft Way Redmond, WA 98052 which establishes jurisdiction through diversity of citizenship.

The case number 1:18-cv-00172-SA-RP Rush v. Berryhill filed 09/12/2018 was allowed to move forward after Magistrate Judge Roy Percy granted an order to proceed in forma pauper and denying a motion for pro/bono conservatorship on 10/29/18. The plaintiff questioned the experience in the northern district and filed a judicial misconduct complaint related to that case after learning the court excluded federal rules of civil procedure that would have allowed for a speedy resolution to the case based on evidence.

In the best interest of justice and fairness the plaintiff requested all cases filed in the Northern District be transferred to the Southern District to prevent the appearance of bias and favor

during the misconduct review. The suit filed against the Chief Judge in the Northern District has the potential to cause the appearance of bias and this point has not been addressed.

In a move that appears to be in retaliation against the ERISA Whistleblower Report filed against the Northern District, the judge violated federal law by placing a stay on all cases, and re-assigning the cases to herself as judge in the Northern District. The Chief Judge's action in joining and staying all cases grants this court authority to assume jurisdiction in this matter.

> **28 USC Judiciary And Judicial Procedure**
> **PART IV: JURISDICTION AND VENUE**
> **Ch. 85: DISTRICT COURTS; JURISDICTION**
> **1359: Parties collusively joined or made**
> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

Therefore, the plaintiff petition the court to amend the previous motion in accordance with the order from the court. In accordance with federal law, the court is asked to review the facts of this case to consider the matter for arbitration.

> **USC 9 Arbitration**
> **Ch. 1: GENERAL PROVISIONS**
> **§6. Application heard as motion**
> Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

Plaintiff would also like to refer the court to his filing on 10/17/2018 in CASE #: 1:18-cv-00172-SA-RP that was granted by a colleague of the court in an order filed 10/29/2018 in that same case. That same case was also questionably assigned the same magistrate judge for an additional 18 cases in which Magistrate Judge Roy Percy refused to acknowledge the pauper application information in that case.

The same information is currently true and sworn to in this affidavit. The plaintiff reads the complaints from the bench regarding the application to proceed in forma pauper, but fails to identify the cause for not granting the order to proceed in the other cases as three case are currently underway with the same plaintiff and the same affidavit.

These cases include

<u>1:18-cv-00172-SA-RP</u>    Rush v. Berryhill    filed 09/12/18

<u>3:18-cv-00854-HTW-LRA</u>    Rush v. Open Arms Healthcare        filed 12/10/18
                            Center

<u>3:18-cv-00855-HTW-LR</u>   Rush v. South Mississippi Rural Health   filed 12/10/18
<u>A</u>                        Initiative

It is unclear what information found in these cases is not available in any of the other cases and the court is asked to refer to these cases rather than create redundancy and additional expenses for litigation. However, part of the judicial misconduct complaint relates to the plaintiff's first experience in litigation which was met with denial for legal assistance due to disabilities and baseless accusations of frivolous filings that have stalled the proceeding unnecessarily.

## CAUSE OF ACTION

Plaintiff's failure to disclose relevant medical and work history stored in files using the defense email and cloud services caused the plaintiff to be considered non-compliant with the Internal Revenue Code which requires adherence to special procedures for maintenance and transference of records under summons in federal disability cases that involve presumptive eligibility and ERISA.

> **26 INTERNAL REVENUE CODE**
> **USC Ch. 78: DISCOVERY OF LIABILITY AND ENFORCEMENT OF TITLE**
> **7609. Special procedures for third-party summonses**
> **(b)** Right to intervene; right to proceeding to quash
> **(1)** Intervention
> Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604

Plaintiff has used the defense for email communication since the late 90's without complaint or grievance.  In 2005 the email account used by the plaintiff was chosen for all business communication and compartmentalizing with features from the defense that made the plaintiff comfortable with the use of the decades old service to store items relevant to a summons where those items were requested.

In 2014, plaintiff noticed several communications needed for upcoming litigation were unavailable on a new internet platform supplied by the defense.  The new platform made changes to material related to intellectual property and other trade materials related to plaintiff business and plaintiff contacted the defense immediately.  Nothing was done

The email service product from the defense was the plaintiff choice for facilitating and managing communications and other digital services related to those disclosures.  These included employment contracts, intellectual property, and health records. After learning from the defense, emails and cloud documents created and stored prior to 2010 were deleted without consent, plaintiff requested a resolution  in compliance with federal statutes immediately.

**47 USC TELECOMMUNICATIONS**

**CHAPTER 9 INTERCEPTION OF DIGITAL AND OTHER COMMUNICATIONS**

**SUBCHAPTER I: INTERCEPTION OF DIGITAL AND OTHER COMMUNICATIONS**

**§1002. Assistance capability requirements**

**(a) Capability requirements**
A telecommunications carrier shall ensure that its equipment, facilities, or services that provide a customer or subscriber with the ability to originate, terminate, or direct communications are capable of—
**(4)** facilitating authorized communications interceptions and access to call-identifying information unobtrusively and with a minimum of interference with any subscriber's telecommunications service and in a manner that protects—
**(A)** the privacy and security of communications and call-identifying information not authorized to be intercepted

The plaintiff has been and is currently a faithful consumer of the products the defense offers since 1996.  The plaintiff has used the services for school, community service, work, and personal projects with no complaints.  Internet storage provided was always sufficient and the plaintiff rarely purchased additional storage for these files.  The plaintiff contacted the defense about the deletions expecting a simple resolution. However,the defense then tried to sale the plaintiff access to the deleted items through the new platform, violating another federal statute.

**15 USC COMMERCE AND TRADE**
**Ch. 110: ONLINE SHOPPER PROTECTION**
**§8402. Prohibitions against certain unfair and deceptive Internet sales practices**

**(a)** Requirements for certain Internet-based sales
It shall be unlawful for any post-transaction third party seller to charge or attempt to charge any consumer's credit card, debit card, bank account, or other financial account for any good or service sold in a transaction effected on the Internet, unless—
**(1)** before obtaining the consumer's billing information, the post-transaction third party seller has clearly and conspicuously disclosed to the consumer all material terms of the transaction, including—
**(C)** the cost of such goods or services; and
**(2)** the post-transaction third party seller has received the express informed consent for the charge from the consumer whose credit card, debit card, bank account, or other financial account will be charged by—
**(A)** obtaining from the consumer—
**(i)** the full account number of the account to be charged; and
**(ii)** the consumer's name and address and a means to contact the consumer; and
**(B)** *requiring the consumer to perform an additional affirmative action, such as clicking on a confirmation button or checking a box that indicates the consumer's consent to be charged the amount disclose*

The defense efforts to change the platform from Microsoft hotmail to Microsoft outlook were provided in a notification through emails that have also now been deleted by the Microsoft system. The notifications did warned of the potential to lose data. The clause "all material terms of the transaction, including—(C) the cost of such goods or services" requires the provider to disclose the possibility of charges for recovery of items deleted without consent of the subscriber. Since the data can never be deleted from the internet, defense efforts to sale access to the data again exhibited a violation of federal law.

### 15 USC COMMERCE AND TRADE
### Ch. 87: TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION

#### §6102. Telemarketing rules

**(a)** In general
**(1)** The Commission shall prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices.

Notes associated with the above mentioned statute include an internet website as a means of dissemination, which encompasses the activity on behalf of the defense. Without disclosing the potential for deletions, the defense infringed upon the rights of the plaintiff's access to the sensitive information in those deleted files. The act of trying to sale the files back to the plaintiff is not only deceptive but unethical.

Before litigation began on case # 1:18-cv-00172-SA-RP, Rush v. Social Security Administration filed 09/12/18 plaintiff contacted the defense regarding initiating arbitration on retrieving the now unattainable information from the defense. The plaintiff has lost access to material related to upcoming trials involving IRS defaults and ERISA claims and the defense refused a reasonable accommodation in plaintiff's attempt to resolve by refusing to communicate using email as requested by the plaintiff.

### 42 USC PUBLIC HEALTH AND WELFARE

#### §12182. Prohibition of discrimination by public accommodations

**(a) General rule**
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**(b) Construction**

**(1) General prohibition**

**(A) Activities**

**(i) Denial of participation**
It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.
**(B) Integrated settings**
Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

Although internet service construction has yet to be listed as a public accomodation or a private entity considered to be a public accomodation, the activity created through commerce is undeniable and most certainly expected to affect the disabled population like the plaintiff. Also operations on the internet should not exempt any private entity from compliance with these rules and regulations in place to ensure the disabled are treated fair..

**42 USC PUBLIC HEALTH AND WELFARE**
**CHAPTER 126 EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES**
**SUBCHAPTER III: PUBLIC ACCOMMODATIONS AND SERVICES OPERATED BY PRIVATE ENTITIES**
**§12181: Definitions**
**(7) Public accommodation**
The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
**(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
**(B)** a restaurant, bar, or other establishment serving food or drink;
**(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
**(D)** an auditorium, convention center, lecture hall, or other place of public gathering;
**(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
**(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
**(G)** a terminal, depot, or other station used for specified public transportation;
**(H)** a museum, library, gallery, or other place of public display or collection;
**(I)** a park, zoo, amusement park, or other place of recreation;
**(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
**(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

**(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

## RELIEF

When the defense refused to use email to communicate the plaintiff decided to allow the courts to enforce the action of recovery of the deleted items.  The information needed to satisfy debts to the United States could be accessed through civil penalties without imposing additional barriers on a consumer suffering from disabilities(in this case an need for written electronic communication due to mental health challenges that cause the plaintiff confusion and frustrations associated with problem solving.  Having the information in written form, to access when plaintiff is most capable, is important for clarity in legal proceedings and personal management and storage of the information.

Violations of Title 15 like the telemarketing rules and online shopper protections charged against the defendants are to be reported to the Bureau of Consumer Financial Protections whom Congress gave the power construct a relief system to the Bureau to address potential violations. However, customers have also been granted the right to access the courts for damages.

**12 USC BANKS AND BANKING**
**CHAPTER 53-WALL STREET REFORM AND CONSUMER PROTECTION**
**SUBCHAPTER V-BUREAU OF CONSUMER FINANCIAL PROTECTION**
**Part E-Enforcement Powers**
**§5565. Relief available**
**(a) Administrative proceedings or court actions**
**(1) Jurisdiction**
The court in an action or adjudication proceeding brought under Federal consumer financial law, shall have jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law, including a violation of a rule or order prescribed under a Federal consumer financial law.
**(2) Relief**
Relief under this section may include, without limitation-
**(B)** refund of moneys or return of real property;
**(E)** payment of damages or other monetary relief;
**(G)** limits on the activities or functions of the person; and
**(H)** civil money penalties, as set forth more fully in subsection (c).
**(c) Civil money penalty in court and administrative actions**
**(1) In general**
Any person that violates, through any act or omission, any provision of Federal consumer financial law shall forfeit and pay a civil penalty pursuant to this subsection.
**(2) Penalty amounts**
**(A) First tier**
For any violation of a law, rule, or final order or condition imposed in writing by the Bureau, a civil penalty may not exceed $5,000 for each day during which such violation or failure to pay continues.
**(B) Second tier**

Notwithstanding paragraph (A), for any person that recklessly engages in a violation of a Federal consumer financial law, a civil penalty may not exceed $25,000 for each day during which such violation continues.

**(C) Third tier**

Notwithstanding subparagraphs (A) and (B), for any person that knowingly violates a Federal consumer financial law, a civil penalty may not exceed $1,000,000 for each day during which such violation continues.

**(3) Mitigating factors**

In determining the amount of any penalty assessed under paragraph (2), the Bureau or the court shall take into account the appropriateness of the penalty with respect to-

**(A)** the size of financial resources and good faith of the person charged;

**(B)** the gravity of the violation or failure to pay;

**(C)** the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided;

**(D)** the history of previous violations; and

**(E)** such other matters as justice may require.

This area of law does not address the need of the plaintiff to satisfy debts to the United States that require access to the deleted items in the possession of the defense. In these cases congress allows the courts to use discretion in determining equitable relief and additional damages from non-compliance.

### 28 USC JUDICIARY AND JUDICIAL PROCEDURE
### PART VI: PARTICULAR PROCEEDINGS
### Ch. 163: FINES, PENALTIES AND FORFEITURES

**§2461. Mode of recovery**

**(a)** Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.

In this case, the plaintiff will not be able to accurately assess the debt to the United States and therefore requests the court reserve any judgement related to damages associated with these violations until the defense has become compliant with the previously mentioned telecommunication violations and violations against consumers consumer laws..

### 28 USC JUDICIARY AND JUDICIAL PROCEDURE
### PART VI: PARTICULAR PROCEEDINGS
### Ch. 151: DECLARATORY JUDGMENTS
### §2201. Creation of remedy

**(a)** In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**§2202. Further relief**

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

Although the defense will be proven to have violated consumer protection in this case, the plaintiff was most offended by his inability to resolve the issue using email communication.  The plaintiff also ask the court reserve judgement on damages or penalties associated with the violation until the severity of impact can be determined and the court can determine the best course of action to encourage arbitration or any means the courts deems necessary in compliance with Title 42.

**42 USC PUBLIC HEALTH AND WELFARE**
**Ch. 126: EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES**
**SUBCHAPTER IV: MISCELLANEOUS PROVISIONS**
**12212: Alternative means of dispute resolution**
Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact-finding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter.

**In order to satisfy his personal obligations and recover property the plaintiff seeks immediate relief**
**\*order the plaintiff make available all items deleted or improperly stored without prior authorization in violation of federal statutes mention above.**
**\*Reserve judgement on any additional relief until defense complies with the previous orders to allow further assessment of damages.**
 **\*Finally, compel arbitration and issue summons requiring the defendant appear before the court.**

*Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.*

**Date of signing:** the 29th day of March  2019

**Signature of Plaintiff** _____s/Zorri N. Rush_____

**Printed Name of Plaintiff** _____Zorri N. Rush_____

(Slip Opinion)         Cite as: 584 U. S. ___ (2018)         1

Per Curiam

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

<hr>

No. 17–2

<hr>

## UNITED STATES, PETITIONER *v.* MICROSOFT CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[April 17, 2018]

PER CURIAM.

The Court granted certiorari in this case to decide whether, when the Government has obtained a warrant under 18 U. S. C. §2703, a U. S. provider of e-mail services must disclose to the Government electronic communications within its control even if the provider stores the communications abroad. 583 U. S. ___ (2017).

In December 2013, federal law enforcement agents applied to the United States District Court for the Southern District of New York for a §2703 warrant requiring Microsoft to disclose all e-mails and other information associated with the account of one of its customers. Satisfied that the agents had demonstrated probable cause to believe that the account was being used to further illegal drug trafficking, a Magistrate Judge issued the requested §2703 warrant. App. 22–26. The warrant directed Microsoft to disclose to the Government the contents of a specified e-mail account and all other records or information associated with the account "[t]o the extent that the information . . . is within [Microsoft's] possession, custody, or control." *Id.*, at 24.

Per Curiam

After service of the §2703 warrant, Microsoft determined that the account's e-mail contents were stored in a sole location: Microsoft's datacenter in Dublin, Ireland. *Id.*, at 34. Microsoft moved to quash the warrant with respect to the information stored in Ireland. The Magistrate Judge denied Microsoft's motion. *In re Warrant To Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.*, 15 F. Supp. 3d 466 (SDNY 2014). The District Court, after a hearing, adopted the Magistrate Judge's reasoning and affirmed his ruling. See *In re Warrant To Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.*, 829 F. 3d 197, 204–205 (CA2 2016). Soon after, acting on a stipulation submitted jointly by the parties, the District Court held Microsoft in civil contempt for refusing to comply fully with the warrant. *Id.*, at 205. On appeal, a panel of the Court of Appeals for the Second Circuit reversed the denial of the motion to quash and vacated the civil contempt finding, holding that requiring Microsoft to disclose the electronic communications in question would be an unauthorized extraterritorial application of §2703. *Id.*, at 222.

The parties now advise us that on March 23, 2018, Congress enacted and the President signed into law the Clarifying Lawful Overseas Use of Data Act (CLOUD Act), as part of the Consolidated Appropriations Act, 2018, Pub. L. 115–141. The CLOUD Act amends the Stored Communications Act, 18 U. S. C. §2701 *et seq.*, by adding the following provision:

> "A [service provider] shall comply with the obligations of this chapter to preserve, backup, or disclose the contents of a wire or electronic communication and any record or other information pertaining to a customer or subscriber within such provider's possession, custody, or control, regardless of whether such communication, record, or other information is located

Per Curiam

within or outside of the United States." CLOUD Act
§103(a)(1).

Soon thereafter, the Government obtained, pursuant to
the new law, a new §2703 warrant covering the infor-
mation requested in the §2703 warrant at issue in this
case.

No live dispute remains between the parties over the
issue with respect to which certiorari was granted.  See
*Department of Treasury, Bureau of Alcohol, Tobacco and
Firearms* v. *Galioto,* 477 U. S. 556, 559 (1986).  Further,
the parties agree that the new warrant has replaced the
original warrant.  This case, therefore, has become moot.
Following the Court's established practice in such cases,
the judgment on review is accordingly vacated, and the
case is remanded to the United States Court of Appeals for
the Second Circuit with instructions first to vacate the
District Court's contempt finding and its denial of Mi-
crosoft's motion to quash, then to direct the District Court
to dismiss the case as moot.

*It is so ordered.*